741 F.2d 318
 Donal M. BRUBAKER, Individually, as Parent and Next Friend
of Brian Michael Brubaker, a minor, and as
Administrator of the Estate of Shirley
Brubaker, Deceased, Plaintiff-Appellant,
v.
John CAVANAUGH, M.D., Defendant-Appellee.
 No. 82-1981.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 22, 1984.
 
 Jerry R. Palmer, P.A., Topeka, Kan., for plaintiff-appellant.
 Charles L. Davis, Jr., Topeka, Kan. (Gary D. McCallister, James G. Keller and Davis, Unrein, Hummer & McCallister, Topeka, Kan., with him on the brief), for defendant-appellee.
 Before SETH, BREITENSTEIN and SEYMOUR, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Plaintiff-appellant in this diversity action appeals from an order of the district court 542 F.Supp. 944 granting summary judgment for the defendant on the ground that the action is barred by the applicable Kansas statute of limitation. We affirm.
 
 
 2
 The facts as alleged by the plaintiff are taken as true for the purposes of this appeal. In this medical malpractice action, plaintiff Donal Brubaker, as administrator of the estate of his wife, Shirley Brubaker, and as father of their son, Brian, seeks damages for personal injury, wrongful death, wrongful birth, and wrongful life. Plaintiff alleges that defendant, Dr. John Cavanaugh, treated Paul Studebaker and his family, including Paul Studebaker's daughter, Shirley, the plaintiff's wife.
 
 
 3
 Dr. Cavanaugh treated Paul Studebaker beginning June 22, 1959, and continuing to his death in 1960 from cancer of the colon. In December, 1959, Cavanaugh diagnosed Studebaker as having multiple polyposis, a disease which passes to the next generation at a known rate of 50 percent and which can lead to cancer of the colon if not treated. Cavanaugh failed to advise the Studebaker family of the hereditary nature of the disease or the fact that timely diagnosis and treatment could eliminate the risk of cancer.
 
 
 4
 Although Shirley Studebaker Brubaker saw Dr. Cavanaugh several times over a period of years after her father died and complained of problems symptomatic of the disease, plaintiff alleges that the doctor never warned her or anyone in the family. Shirley Brubaker was last seen by the defendant as a patient on December 18, 1968. In October, 1979, Shirley was diagnosed by another doctor as having multiple familial polyposis.
 
 
 5
 Plaintiff further alleges that due to the doctor's failure to warn her, Shirley Brubaker had children, including a son, Brian, who was born in 1971. He was diagnosed in 1980 as having multiple familial polyposis.
 
 
 6
 This action was brought November 20, 1980. Shirley Brubaker died in 1981. Her husband, Donal Brubaker, was appointed administrator of her estate and filed the amended complaint. In 1982 the district court granted defendant's motion for summary judgment, finding that all causes of action were barred by the statute of limitations applicable to health care professionals.
 
 
 7
 The portions of the statute of limitations, Kan.Stat.Ann. 60-513, which apply to medical malpractice read:
 
 
 8
 "60-513. Actions limited to two years.
 
 
 9
 (a) The following actions shall be brought within two (2) years:
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 (7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 (c) A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four (4) years beyond the time of the act giving rise to the cause of action." (Emphasis supplied.)
 
 
 16
 The statute establishes a "discovery rule." In cases such as this where the injury is not discovered until sometime after the alleged negligent act, the plaintiff has two years from the date of discovery to bring suit. The "discovery rule" is limited in that no action may be commenced more than four years after the act or omission alleged to have caused the injury.
 
 
 17
 As the trial court noted, the duty to inform Paul Studebaker and his family of the nature of the disease arose at the time it was diagnosed, and it was breached during the time of treatment. The latest possible date on which any negligent act could have occurred was December 18, 1968, the date on which the defendant last examined Shirley Brubaker. The statute would thus bar an action brought later than December 18, 1972.
 
 
 18
 The Kansas statute was interpreted and applied by the Kansas Supreme Court in Stephens v. Snyder Clinic Ass'n, 230 Kan. 115, 631 P.2d 222, 226, which said:
 
 
 19
 "The effect of the statute of limitations requires an unfortunate result in the present case, especially since plaintiff's injury was not ascertainable before the statute extinguished her right to bring the action, and her suit would have been timely had the amended statute not intervened. It is clear, however, that the legislature has the authority to set statutes of limitation, that the classification of 'health care providers' for beneficial treatment is justified and reasonable, and without constitutional infirmity."
 
 
 20
 Plaintiff argues that the statute of limitations is unconstitutional as applied to him in that it violates due process. He claims that Shirley Brubaker was in a special class of injured persons because, when the four year limitation period passed, she still had not been diagnosed and did not know of the injury. He argues that due process is violated by a statute that bars an action before all necessary elements constituting the cause of action are present. Some reasonable time must be allowed for filing an action following discovery of an injury. This argument was analyzed and rejected in Jewson v. Mayo Clinic, 8 Cir., 691 F.2d 405. Quoting Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 the court noted, 691 F.2d at 411, that:
 
 
 21
 "[Statutes of limitation] are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay."
 
 The court continued, 691 F.2d at 411:
 
 22
 "They sometimes expire before a claimant has sustained any injury, ... or before he knows he has sustained an injury,.... If the limitation period is otherwise reasonable, a claimant is not thereby deprived of his right to due process." (Citations omitted.)
 
 
 23
 In the case at bar the duty to inform the family arose in 1959 when Dr. Cavanaugh undertook the treatment and diagnosed Paul Studebaker, and extended no later than December 18, 1968 when he last treated Shirley Brubaker. The state has a legitimate interest in preventing stale claims. The statute provides a reasonable length of time in which to bring suit. Although it works a hardship on particular plaintiffs, there is no violation of due process in its application.
 
 
 24
 Plaintiff argues that the statute violates his equal protection rights in two respects. First, it protects only health care providers and not other professionals who might also be faced with rising malpractice rates. Secondly, it deprives one narrow class of injured persons, those who cannot discover the injury until after their rights are barred, of a remedy.
 
 
 25
 In a case such as this, we look only to whether there is a rational relationship between the classification and some legitimate governmental purpose in determining whether the statute violates the equal protection clause. See Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 and Barwick v. Celotex Corp., 4 Cir., 736 F.2d 946, p. 958 (1984). As plaintiff concedes, it is generally within the sound discretion of the legislature to enact statutes of limitation. Such statutes carry a strong presumption of constitutionality. Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435.
 
 
 26
 Plaintiff argues that Kan.Stat.Ann. 60-513, as amended in 1976, unreasonably distinguishes between the four year limitation period for "health care providers" and the ten year limitation period for other tortfeasors. This argument was rejected by the Kansas Supreme Court in Stephens v. Snyder Clinic Association, 230 Kan. 115, 631 P.2d 222. In upholding the statute against an equal protection challenge, the court said, 631 P.2d at 234-235:
 
 
 27
 "The 1976 amendment to K.S.A. 60-513 was the legislature's attempt to assure continued quality health care for Kansans by combating the rapidly rising cost of medical malpractice insurance and the increasing reluctance of insurance underwriters to underwrite medical professionals. One of the principal causes of the increased costs and unavailability of medical malpractice insurance was attributed to the 'long tail,' or the length of time after the negligent conduct, allowed for the discovery of the injury and the filing of suit thereon.... Reduction of the discovery period was considered to be the obvious compromise to assure continued availability of malpractice insurance while protecting the injured parties' causes of action...."
 
 
 28
 The court went on to say that the public interest in solving the medical malpractice problem is discussed in depth in State ex rel. Schneider v. Liggett, 223 Kan. 610, 576 P.2d 221, which held that there is a reasonable basis for treating malpractice actions against health care providers differently from cases involving other tortfeasors.
 
 
 29
 We conclude, as did the Kansas Supreme Court, that a rational relation exists between the shorter limitation period for health care providers and the legitimate objective of providing quality health care in Kansas. Plaintiff recites much evidence that there is no such relation, but he cites nothing which indicates that the legislature's studied choice, made in a context in which all interested parties are able to contribute, was irrational.
 
 
 30
 Plaintiff argues that the equal protection clause is violated because it denies a remedy to those injured persons who cannot discover the injury until their rights to sue are barred. Although this harsh effect may result in some cases, the statute makes no distinction. It simply cuts off all remedies after the four-year period has passed. The statute does not violate the equal protection clause.
 
 
 31
 Plaintiff urges that we adopt a "continuing tort" theory of liability by holding that the doctor's duty continued as long as he undertook it. Specifically, plaintiff argues that by asking Mrs. Studebaker (Shirley Brubaker's mother) how her children were, the doctor's duty extended well into the mid-seventies. See Appellant's brief at 37. In earlier malpractice cases, the Kansas Supreme Court rejected the continuous treatment or physician-patient relationship theories under which a cause of action would not begin to run as long as the physician continues to treat the patient for the injury which resulted from the negligent act, or the professional relationship exists. See Hecht v. First National Bank and Trust Co., 208 Kan. 84, 490 P.2d 649; and Becker v. Floersch, 153 Kan. 374, 110 P.2d 752.
 
 
 32
 In Hecht, supra, 490 P.2d at 656-657, the court said:
 
 
 33
 "An examination of the cases in which either of the two doctrines (physician-patient relationship or continuous treatment) was adopted reveals that generally the treatment was a judicial effort to soften the harshness of the statutory accrual rule existing in the particular jurisdiction at the time. The Kansas legislature preempted policy making on the subject by enacting in 1963 the additional provision of 60-513 and has given the matter further consideration by enacting in 1970 additional provisions relating to injuries resulting from ionizing radiation.... The legislature did not see fit to mention either 'physician-patient relationship' or 'continuous treatment' as an element in measuring the time in which a cause of action accrues. We are not inclined to do so by judicially legislating."
 
 
 34
 Even if Kansas recognized the "physician-patient" or the "continuous treatment" exceptions to the statute of limitations, the physician-patient relationship ended on December 18, 1968 when Shirley Brubaker last saw the defendant professionally. A finding that a duty extended because the defendant asked the plaintiff's mother how her children were and whether they were getting their examinations, where there was no physician-patient relationship, would effectively defeat any statute of limitations.
 
 
 35
 Affirmed.