**Polizetta FERGUSON, Plaintiff,**

v.

**Gregg W. GARMON, M.D., and the Menninger Foundation, Defendants.**

Civ. A. No. 84–2054.

United States District Court, D. Kansas.

Aug. 28, 1986.

Jerry R. Palmer, Jerry Levy, Levy, Smith, Garrett & Smith, Topeka, Kan., for plaintiff.

Edwin D. Smith, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for defendant Garmon.

Gary E. Laughlin, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for defendant Menninger Foundation.

Wayne T. Stratton, Marta Fisher Linenberger, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for amicus curiae The Kansas Hosp. Ass'n and The Kansas Medical Society.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is pending before the court on two motions. First, plaintiff Polizetta

Ferguson has moved for a determination in advance of trial of the constitutionality of K.S.A. 60–3403. Plaintiff contends that the statute, which allows defendants who are health care providers to introduce evidence showing the amount of collateral source payments received by plaintiffs, violates the equal protection and due process clauses of the United States and Kansas Constitutions.[1] Second, defendants Gregg W. Garmon and the Menninger Foundation ask the court to certify certain questions of law to the Kansas Supreme Court.

## I. *Defendants' Motion to Certify Questions of Law.*

We first address defendants' motion to certify questions of law to the Kansas Supreme Court. Defendants ask the court to certify the following questions:

1. Do the provisions of Laws 1985, Chapter 197, Section 3, [K.S.A. 60–3403] change only the law of evidence, or is the substantive law of Kansas also altered to diminish a plaintiff's right to recover damages previously recoverable in a common law action for medical malpractice?

2. Do the provisions of Laws 1985, Chapter 197, Section 3, [K.S.A. 60–3403] violate the Kansas Constitution?

3. Are the provisions of Laws 1985, Chapter 197, Section 3, [K.S.A. 60–3403] severable from the remainder of Chapter 197, so that the constitutionality of Section 3 can be determined separately and independently of the constitutionality of the remainder of Chapter 197?

■ The decision whether to certify a question of state law "rests in the sound discretion of the federal court." *Lehman Brothers v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Generally, however, the certification proce-

dure should be used only to determine state law questions; the state court should not be asked to decide any issues of federal law. *Fretz v. Keltner,* 109 F.R.D. 303, 305 (D.Kan.1985); 17 Wright, Miller, and Cooper, *Federal Practice and Procedure* § 4248, at 529 (1978).

■ Although plaintiff nominally challenges K.S.A. 60–3403 under both the United States and Kansas Constitutions, we agree with the Honorable Dale E. Saffels that the issue posed "is essentially a question of federal law involving federally-protected rights." *Fretz,* 109 F.R.D. at 306 (refusing to certify similar questions in a case involving the same issues as are raised here). In any event, in *Wentling v. Medical Anesthesia Services,* 237 Kan. 503, 701 P.2d 939 (1985), the Kansas Supreme Court addressed the constitutionality of the predecessor statute to K.S.A. 60–3403 and found it unnecessary to discuss the first and third proposed questions for certification. We are similarly convinced that those questions need not be answered to determine the constitutionality of the current state statute. Nor do we think it necessary to certify the second proposed question. The Kansas Supreme Court has given sufficient guidance on the scope of the relevant Kansas constitutional provisions that we need not delay trial by certifying the question. Therefore, we shall deny defendants' motion to certify questions of law to that court.

## II. *Federal Equal Protection Challenge.*

In her complaint, plaintiff alleges that she has suffered injuries resulting in an almost total loss of her digestive tract and that those injuries were caused by defendants' negligence. A portion of her medical expenses have been and are being paid by insurance.

1. Recently, plaintiff filed a request to withdraw her motion. Defendants have responded by moving for a ruling on plaintiff's original motion, citing their continued determination to introduce evidence of collateral payments and the expense the parties and amicus curiae have incurred in briefing the issues. We also note that plaintiff has reserved the right to reassert her

motion. Given the approaching trial setting and the court's preference for determining the issue in the relatively calm, pre-trial atmosphere, rather than producing a hurried decision during trial, we shall rule on the motion. For the sake of convenience, we shall continue to refer to it as plaintiff's motion.

Defendants want to introduce evidence of plaintiff's insurance payments in the hope that the jury will reduce any award to plaintiff by the amount of those payments. Although evidence of such collateral source payments has long been inadmissible under the common law, *Coburn v. Agustin,* 627 F.Supp. 983, 985 (D.Kan.1985), the Kansas Legislature enacted K.S.A. 60–3403 to allow for the introduction of such evidence in medical malpractice liability actions. Plaintiff argues that the statute violates her federal constitutional right to the equal protection of the law because it treats her and other medical malpractice plaintiffs differently than other tort plaintiffs.

### A.  *Legal Standards.*

■ The Equal Protection Clause "generally provides that all persons similarly situated should be treated alike." *Edwards v. Valdez,* 789 F.2d 1477, 1482 (10th Cir.1986) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Traditionally, two standards have been used to determine whether state legislation runs afoul of that clause. The first, and by far the most commonly applied, is the rational basis test. Under this test, the court "seek[s] only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Plyler,* 457 U.S. at 216, 102 S.Ct. at 2394.

The second standard, labeled "strict scrutiny," is applied when the challenged classification involves a suspect class or impinges upon a fundamental right. Suspect classes include those based on race, *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), alienage, *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), and national origin, *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). Fundamental rights include voting, privacy, freedom of association, marriage, and travel. *See generally San Antonio School District v. Rodriguez,* 411 U.S. 1, 17–39, 93 S.Ct. 1278, 1288–1300, 36 L.Ed.2d 16 (1973). A statute that draws such classifications violates

equal protection unless the state can "demonstrate that its classification is precisely tailored to serve a compelling government interest." *Plyler,* 457 U.S. at 217, 102 S.Ct. at 2395; *see also Hoffman v. United States,* 767 F.2d 1431, 1435 (9th Cir.1985).

■ In recent years, the Supreme Court has enunciated a third, intermediate level of scrutiny, which is applied to classifications based on gender, *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), and illegitimacy, *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Under this level of review, a statutory classification is valid if it *substantially furthers* a legitimate state interest. *Edwards,* 789 F.2d at 1483.

### B.  *Choosing a Standard.*

■ A court's choice of which of the standards to apply to a given statutory classification has, of course, a tremendous effect on whether the statute is upheld or found to be unconstitutional. Obviously, a statute that undergoes strict scrutiny faces a far greater likelihood of being found to violate the Equal Protection Clause than one that is examined under the relatively toothless rational basis test. And that conclusion is borne out by those decisions which examine statutes that treat medical malpractice plaintiffs differently than other tort plaintiffs.

Several state courts have examined the constitutionality of state statutes that either abrogate the collateral source rule for medical malpractice suits, or otherwise provide special rules for such cases, such as mandatory pre-trial screening or limitations on damage awards. Invariably, those courts that decide to apply an intermediate level of scrutiny have found such statutes to be unconstitutional. *See, e.g., Wentling v. Medical Anesthesia Services,* 237 Kan. 503, 701 P.2d 939 (1985); *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (1980); and *Arneson v. Olson,* 270 N.W.2d 125 (N.D.1978). On the other hand, no court that has applied the rational basis test to such a classification has found

it to violate equal protection. *See Pinillos v. Cedars of Lebanon Hospital Corp.,* 403 So.2d 365 (Fla.1981); *Rudolph v. Iowa Methodist Medical Center,* 293 N.W.2d 550 (Iowa 1980); *Johnson v. St. Vincent's Hospital, Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980); *Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657 (1977).

Obviously, then, perhaps the most important task before the court is to choose which standard to apply in the instant case. Because the classification in issue involves neither a suspect class nor a fundamental right, strict scrutiny is clearly inapplicable. *Hoffman,* 767 F.2d at 1435. The question is whether to apply the rational basis test or a more stringent form of scrutiny.

The constitutionality of K.S.A. 60–3403 and its predecessor, K.S.A. 60–471, have been examined by four of the judges from this district. In *Marlatt v. Hutton,* No. 76–46–C5 (D.Kan., *unpublished,* April 3, 1979), and *Holman v. The Menninger Foundation,* No. 79–4090 (D.Kan., *unpublished,* July 13, 1982), Judge Richard Rogers held that K.S.A. 60–471 was constitutional. However, Judge Frank Theis, in *Doran v. Priddy,* 534 F.Supp. 30, 37 (D.Kan.1981), apparently employed middle level scrutiny and struck down the same statute.[2]

More recently, Judge Patrick F. Kelly considered an equal protection challenge to the current statute in *Crowe v. Wigglesworth,* 623 F.Supp. 699 (D.Kan.1985). Although he criticized the statute and questioned its necessity, *Id.* at 705–707, he upheld it using the rational basis test. In *Coburn v. Agustin,* 627 F.Supp. 983 (D.Kan.1985), however, Judge Theis reexamined the issue in light of the amended statute. There, unlike in his earlier decision in *Doran,* he refused to apply middle level review, recognizing that "[t]he Supreme Court has used intermediate scrutiny haltingly, and has not extended it to any categories other than gender, [citation omitted], alienage [citation omitted], or illegitimacy. [Citation omitted]" *Id.* at 993.

Nonetheless, he applied what he termed "a heightened form of rational basis scrutiny," which apparently falls somewhere between the intermediate and rational basis tests, to invalidate the present statute. Finally, in *Fretz v. Keltner,* Judge Saffels addressed the issue and endorsed the analysis expressed by Judge Theis in *Coburn.* 109 F.R.D. 303.

To this dissonance, we must add our voice. Unfortunately, our conclusion will not resolve the disharmony. With all due respect to Judges Theis and Saffels, we believe that, under the law, we must employ the rational basis test.

Our conclusion is based in large part on the unanimity with which the courts of appeals have applied the rational basis test to uphold all sorts of statutes that treat medical malpractice plaintiffs differently than other tort plaintiffs. The Second, Fourth, Fifth, Eighth, Ninth, and, significantly, the Tenth Circuits have all agreed that the rational basis test applies to statutes that draw such a classification. *See Gronne v. Abrams,* 793 F.2d 74 (2d Cir. 1986) (applying the rational basis test to uphold a New York statute that requires pre-trial screening of medical malpractice claims); *Montagino v. Canale,* 792 F.2d 554 (5th Cir.1986) (applying the rational basis test to uphold a Louisiana statute that sets a lower statute of limitations for medical malpractice claims); *Hoffman v. United States,* 767 F.2d 1431 (9th Cir.1985) (applying the rational basis test to uphold a California statute that limits noneconomic losses in medical malpractice actions to $250,000.00); *Brubaker v. Cavanaugh,* 741 F.2d 318 (10th Cir.1984) (applying the rational basis test to uphold a Kansas statute that sets a lower statute of limitations for medical malpractice claims); *Jewson v. Mayo Clinic,* 691 F.2d 405 (8th Cir.1982) (applying the rational basis test to uphold a Minnesota statute that sets a lower statute of limitations for medical malpractice claims); *DiAntonio v. Northampton-Accomack Memorial Hospital,* 628 F.2d 287

---

2. As we shall discuss more fully below, the Kansas Supreme Court agreed with Judge Theis in *Wentling v. Medical Anesthesia Services,* 237 Kan. 503, 518, 701 P.2d 939, 950–51 (1985).

(4th Cir.1980) (applying the rational basis test to uphold a Virginia statute that provides for pre-trial screening of medical malpractice claims).

We are, of course, particularly guided by the Tenth Circuit's decision in *Brubaker*. As we just noted, the court there applied the rational basis test, without hesitation, to a Kansas statute that provides a shorter statute of limitations for actions against health care providers than against other tortfeasors. 741 F.2d 318. Surely, if a statute that shortens the time within which a plaintiff must sue to avoid losing his entire claim need only meet minimal scrutiny, a statute that merely allows evidence of collateral source payments to be considered by a jury faces no more exacting standard.

Judge Theis, in *Coburn*, recognized that the courts of appeals have made their views clear. Nonetheless, he dismissed those cases as being "unhelpful" and of "scant assistance" because "they applied the mere rational basis test without any consideration of whether heightened scrutiny was required." 627 F.Supp. at 992. Although we perhaps agree with Judge Theis that the Supreme Court has, on recent occasions, applied the rational basis test more stringently than it has done so traditionally, (*see, e.g., City of Cleburne v. Cleburne Living Center,* — U.S. —, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the Court has expressly denied that it was blurring the tripartite level of review under equal protection law. *Id.* — U.S. at —, 105 S.Ct. at 3266. Moreover, we deem it significant that the courts of appeals have refused to discuss, much less recognize, the heightened form of rational basis test enunciated in *Coburn*.

Finally, we note that in 1985 the Supreme Court summarily dismissed a relevant decision by the California Supreme court in *Fein v. Permanente Medical Group*, 38 Cal.3d 137, 695 P.2d 665, 211 Cal.Rptr. 368, appeal dismissed, — U.S. —, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985). In *Fein*, the state supreme court used the rational basis test in determining that the California statute, which limits recovery of noneconomic damages and allows health care providers to introduce evidence of collateral source payments, is constitutional. The plaintiff appealed only the court's ruling on the noneconomic losses limit. The United States Supreme Court dismissed the appeal for want of a substantial federal question. 106 S.Ct. 214.

Admittedly, the Supreme Court's summary dismissal did not explicitly address which level of review is appropriate. Nonetheless, the Court's decision was a ruling, on the merits, (*see Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975)), that the plaintiff's equal protection argument did not pose a substantial federal question. The Court has warned that "inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise." *Hicks*, 422 U.S. at 344, 95 S.Ct. at 2289 (quoting *Port Authority Bond Holders Protective Committee v. Port of New York Authority*, 387 F.2d 259, 263 n. 3 (1967)). Because there have been no doctrinal developments in the interim, and because we are unpersuaded by Judge Theis' attempt to distinguish *Fein*, we conclude that medical malpractice classifications warrant minimal scrutiny and thus that the court need only assure itself that such classifications are rationally related to a legitimate state purpose.

C. *Apply the Rational Basis Test.*

Before applying the rational basis test, we feel compelled to make two observations. First, we strongly doubt that a medical malpractice "crisis" exists or that, if it does, that it has been caused by excessive verdicts, as the insurance industry self-servedly suggests. Other factors, including poor business judgment exercised by insurance companies in the 1970's, are at least as responsible for the recent surge in medical malpractice premiums. Second, we tend to believe that the legislature has acted unfairly in changing the collateral source rule only to benefit physicians, hos-

pitals, and, of course, ultimately the insurance industry. If the rule is unwise or unnecessary, it should be changed across the board, regardless of whom the tortfeasor happens to be.

▮ Nonetheless, the statute is presumed to be constitutional, *Crowe*, 623 F.Supp. at 703, and the court cannot substitute its judgment for that of the legislature. The legislature has decided that a malpractice crisis exists: that medical malpractice premiums are rising dramatically and that such increases may cause physicians to leave the profession, thus decreasing the availability and quality of health care available to Kansas residents. Certainly, the prevention of such a social evil is a matter of legitimate public concern. Further, it is not irrational for the legislature to believe that K.S.A. 60–3403 will help alleviate the perceived problem. The introduction of evidence of collateral source payments may often result in smaller verdicts. Because insurance companies may thus pay out less in damage awards, physicians' insurance premiums conceivably may drop or at least level off. Therefore, the statute is rationally related to a legitimate state purpose and does not violate the Equal Protection Clause of the United States Constitution.

## III. *Kansas Equal Protection Challenge.*

▮ Plaintiff also argues that K.S.A. 60–3403 violates her right to equal protection under the Kansas Constitution. Generally, the Kansas courts appear to construe the Kansas Constitution's equal protection provision as being substantially the equivalent of the fourteenth amendment. *Coburn*, 627 F.Supp. at 986 (citing *State ex. rel. Schneider v. Liggett*, 223 Kan. 610, 616–18, 576 P.2d 221, 227–28 (1978). Thus, a determination that a statute does not violate the federal equal protection clause would normally answer the Kansas constitutional question as well.

We note, however, that the Kansas Supreme Court struck down the predecessor of K.S.A. 60–3403, in *Wentling v. Medical Anesthesia Services*, 237 Kan. 503, 701 P.2d 939 (1985), as a violation not only of the federal constitution, but the Kansas Constitution as well. 237 Kan. 503, 701 P.2d 939. Because the current statute bears some similarity to its former version, we shall analyze it in light of the court's decision in *Wentling* to determine its validity under the Kansas Constitution.

In *Wentling*, the court noted that the former statute drew two classifications. First, it allowed the introduction of evidence of collateral source payments only if the alleged tortfeasor was a physician or hospital. Second, it compounded the discrimination by excluding such evidence if the payments were from insurance or from services paid for by the plaintiff's employer. Thus, a plaintiff who could afford insurance escaped from the modified rule, but one who had to rely on gratuitous benefits, such as care received from a spouse, did not. *Id.* 237 Kan. at 517–18, 701 P.2d at 950.

The court focused, however, exclusively on the latter classification. It italicized that portion of the predecessor statute that treated insurance payments and employer provided benefits more favorably. *Id.* at 516, 701 P.2d at 949. Moreover, the "invidious hypothetical example" cited by the court to demonstrate the statute's infirmity focused on that distinction:

> Assume a married couple is injured in the same catastrophe. They are both treated by the same health care provider with disastrous results. The husband is employed and his employer provides health insurance. The wife is not gainfully employed. In separate actions for similar treatment provided by the same health care provider as a result of the same catastrophe, the fact that the wife's medical expenses were paid by insurance is proper evidence to submit to the jury but the same evidence as it applies to the husband is not. Such a distinction makes no sense whatsoever.

Accordingly, the court had little trouble holding that the classification was not rationally related to any legitimate end.

The current statute, however, does not contain the distinction that troubled the *Wentling* court; insurance payments are treated no differently than gratuitous ones. *See* K.S.A. 60–3403. And the court recognized that fact, noting: "the 1985 Legislature evidently recognized some of the shortcomings of the statute in repealing K.S.A. 60–471 and adopting new legislation [K.S.A. 60–3403]." *Id.* at 518, 701 P.2d at 951. Hence, we are convinced that the Kansas Supreme Court would uphold the validity of K.S.A. 60–3403 under the Kansas Constitution as it has other medical malpractice statutes. *See, e.g., Stephens v. Snyder Clinic Association,* 230 Kan. 115, 631 P.2d 222 (1981) (shorter statute of limitations for medical malpractice claims does not violate the Kansas Constitution); *State ex. rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 (1978) (statute that requires doctors, but not dentists or nurses, to purchase malpractice liability insurance and pay a surcharge to the health care stabilization fund does not violate the Kansas Constitution).

IV. *Due Process Challenge.*

Plaintiff also raises a substantive due process challenge to K.S.A. 60–3403 under both the federal and Kansas Constitutions. We hold that the statute does not violate plaintiff's due process rights.

 Under federal substantive due process law, the level of review given economic and social regulations such as the statute in question is quite deferential. In determining whether such regulations violate substantive due process, "courts consistently defer to legislative determinations as to the desirability of particular statutory schemes." *Murphy v. Matheson,* 742 F.2d 564, 575 (10th Cir.1984). Moreover, we are "to require only that the law 'bears a reasonable relation to the State's legitimate purpose....'" *Id.* (quoting *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 125, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978)). The requirements of the Kansas Constitution are identical. *See Liggett,* 223 Kan. at 613–14, 576 P.2d at 225–26.

As we indicated in our discussion of plaintiff's federal equal protection claim, K.S.A. 60–3403 was enacted for a legitimate public purpose: preventing a decline in the quality of health care in the state. Because the law has a rational relation to that object, it does not violate due process under either the federal or Kansas Constitutions.

IT IS THEREFORE ORDERED that plaintiff's motion for a determination that K.S.A. 60–3403 violates the Equal Protection and Due Process Clauses of the United States and Kansas Constitutions is hereby denied.