914 F.Supp. 443 (1996)
Darcy M. AVES, a Minor, By and Through Dan J. AVES and Faye E. Aves, Her Mother and Father, Natural Guardians and Next Friends; Darcy M. Aves, Individually; and Dan J. Aves and Faye E. Aves, Individually, Plaintiffs,
v.
Nasreen B. SHAH, M.D., Defendant,
v.
Ron TODD, Commissioner of Insurance of the State of Kansas, as Administrator of the Health Care Stabilization Fund, Garnishee.
No. 88-1669-PFK.
United States District Court, D. Kansas.
January 18, 1996.
*444 *445 Mark B. Hutton, Derek S. Casey and Channel P. Townsley, of Hutton & Hutton, Wichita, KS, Randall E. Fisher, Law Offices of Randall E. Fisher, Wichita, KS, Arden J. Bradshaw and Troy H. Gott, of Bradshaw, Johnson & Hund, Wichita, KS, for plaintiffs.
William Tinker, Jr., of McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, KS for Shah and insurance carrier.
Richard I. Stephenson, of Fleeson, Gooing, Coulson & Kitch, Wichita, KS for Shah.
Steven C. Day, of Woodard, Blaylock, Hernandez, Roth & Day, Wichita, KS, for Kansas Health Care Stabilization Fund.

MEMORANDUM AND ORDER
PATRICK F. KELLY, Senior District Judge.
The action currently before the court is a garnishment action against the Commissioner of Insurance of the State of Kansas, in his role as Administrator of the Kansas Health Care Stabilization Fund. Underlying the garnishment action is the judgment returned in a medical malpractice action brought against Dr. Nasreen B. Shah and the Central Kansas Medical Center. In 1990, the jury in the malpractice action returned a verdict for the plaintiffs, Darcy Aves and her parents, in excess of $23 million, finding Dr. Shah 90% at fault and the medical center 10% at fault. Dr. Shah's share of the damages exceeds $21 million. The jury's verdict was affirmed on appeal. Aves v. Shah, 997 F.2d 762 (10th Cir.1993).
The plaintiffs commenced the present garnishment action alleging that the Fund acted in bad faith or with negligence in its actions preceding the trial of the malpractice action. Specifically, the plaintiffs contend that the Fund rejected settlement offers of $1.5 to 2 million, despite warnings from Dr. Shah's attorney and an independent advisory counsel appointed by the Fund that any verdict would likely exceed the $3.2 million policy limits. The Fund specifically rejected offers by the Aves family to settle the case for $3.1 or 3.2 million.
The plaintiffs contend that the Fund acted negligently or in bad faith by refusing to settle the case within the policy limits established for the Fund under state law. The Fund was created as a result of the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 et seq. One portion of the Act, K.S.A. 40-3403(e), provides:
(e) In no event shall the fund be liable to pay in excess of $3,000,000 pursuant to any one judgment or settlement against any one health care provider relating to any injury or death arising out of the rendering of or the failure to render professional services on and after July 1, 1984, and before July 1, 1989, subject to an aggregate limitation for all judgments or settlements arising from all claims made in any one fiscal year in the amount of $6,000,000 for each health care provider.
The Act also provides pursuant to K.S.A. 40-3412(c) (1994 Supp.) that:
Nothing herein shall be construed to impose any liability in the fund in excess of that specifically provided for herein for negligent failure to settle a claim or for failure to settle a claim in good faith.
*446 The Fund has moved to dismiss the plaintiffs' claims on a variety of grounds. The Fund argues that it is an agency of the State of Kansas and therefore immune from the plaintiffs' claims under the Eleventh Amendment; that there is incomplete diversity of citizenship among the parties and thus no subject matter jurisdiction in the garnishment proceedings; and that K.S.A. 40-3403 and 40-3412 bar any action against the Fund for bad faith or negligent failure to settle a claim.
In order to obtain a clearer statement of Kansas law on the viability of the plaintiffs' claims of negligence and bad faith, this court, on December 12, 1994, addressed certified questions to the Kansas Supreme Court. The court asked:
1. Whether, in light of the provisions of the Health Care Provider Insurance Availability Act, Kansas law recognizes a claim of bad faith against the Health Care Stabilization Fund when a judgment is returned in excess of the Fund's statutory limits of liability.
2. May the plaintiffs holding the excess judgment prosecute such a bad faith action against the Fund by way of garnishment in light of K.S.A. 60-723(d)?
On November 3, 1995, the Kansas Supreme Court responded to the first question by holding that K.S.A. 40-3403(e) and 40-3412(c) bar any action against the Fund for bad faith or for negligent failure to settle a claim. Aves v. Shah, 258 Kan. 506, 906 P.2d 642 (1995). The court declined to answer the second question, finding the matter moot in light of its conclusion regarding the first certified question.
In reaching its conclusion, the court agreed with the argument that K.S.A. 40-3412(c) "was originally intended to prevent common-law bad faith claims" against the Fund. 906 P.2d at 651. The court also rejected the argument of the plaintiffs that K.S.A. 40-3412(c) is an unconscionable term of the insurance contract, that the Fund was estopped to assert the defenses created by the statutes, or that 40-3412(c) violated the due process and equal protection guarantees of the Kansas Constitution Bill of Rights.
This response to the certified questions puts in issue the Fund's motion to dismiss, as well as the competing motion to determine a question of law filed by the plaintiffs, in which the plaintiffs seek a determination that K.S.A. 40-3412(c) and 40-3403 violate the federal constitution.[1] Because the briefs addressing the issues presented by these motions were originally presented prior to the submission of the certified questions, on November 14, 1995, the court explicitly invited both the Fund and the plaintiffs to present supplemental briefs on the remaining constitutional issues.
Both parties have complied, and the court has carefully reviewed these briefs, as well as all other pleadings in the present action. The court finds that oral argument would not materially assist in the resolution of the issues presented by the various motions, and accordingly will proceed directly to the merits of the plaintiffs' constitutional arguments.
The plaintiffs attack the provisions of the Act which bar a bad faith claim on three grounds. They contend that the Act's prohibition of an action for bad faith impairs the contractual obligations between Dr. Shah and her insurer, in violation of the Contract Clause of the United States Constitution. They also contend that the Act violates due process and equal protection.
The contract clause provides: "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art I, § 10. Although the text of the clause itself would appear to bar any state legislation affecting contracts, the courts have never applied the bar so broadly. The clause should not be understood to be "the Draconian provision that its words might seem to imply." Allied Structural Steel v. Spannaus, *447 438 U.S. 234, 240, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978). "[L]iteralism in the construction of the contract clause," the Supreme Court has stated, "would make it destructive of the public interest by depriving the State of its prerogative of self-protection." W.B. Worthen Co. v. Thomas, 292 U.S. 426, 433, 54 S.Ct. 816, 818, 78 L.Ed. 1344 (1934). See also National R.R. Passenger Corp. v. Atchison, T. & S.F. Ry. Co., 470 U.S. 451, 472, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985).
Instead, the courts have focused upon the magnitude of the alleged infringement. The inquiry into the validity of state legislation under the contract clause "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." General Motors Corp. v. Romein, 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992).
The importance of the contract clause as a vehicle for striking down state laws reached its high water mark in the nineteenth century. In this century the importance of the clause has ebbed significantly. Nonetheless, the Supreme Court has recently indicated that the clause "remains a part of our written Constitution." United States Trust Co. v. New Jersey, 431 U.S. 1, 16, 97 S.Ct. 1505, 1514, 52 L.Ed.2d 92 (1977). In Allied Structural Steel, 438 U.S. at 241, 242, 98 S.Ct. at 2721, the Court stated that the contract clause is "not a dead letter," and "must be understood to impose some limits upon the power of a State to abridge existing contractual relationships."
The underlying purpose of the contract clause is to protect the expectations of persons who enter into contracts from the danger of subsequent legislation.
Contracts enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them.
Allied Structural, 438 U.S. at 245, 98 S.Ct. at 2723.
It is for this reason that the plaintiffs' contract clause attack on K.S.A. 40-3403 and 40-3412 must fail. Even assuming the existence of a contract relationship which was significantly impaired by these statutes, it is apparent here that the statutes did not affect any pre-existing contract. The challenged provisions of the Health Care Provider Insurance Availability Act were adopted in 1976, long before the effective date of any contractual relationship between Dr. Shah and her insurer. Accordingly, the application of the provisions of the Act cannot do damage to any reasonable reliance expectations of the parties to the contract.
The contract clause applies to state actions which "impair the obligation of pre-existing contracts." General Motors v. Romein, 503 U.S. at 189, 112 S.Ct. at 1111 (emphasis added). A "statute cannot be said to impair a contract that did not exist at the time of its enactment." Texaco, Inc. v. Short, 454 U.S. 516, 531, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982). See also Reding v. Texaco, Inc., 598 F.2d 513, 519 (9th Cir.1979) (contractual obligations cannot be impaired under the contracts clause "by a statute enacted prior to the making of the contract").[2]
Next, the plaintiffs assert that the Act violates equal protection by preventing them from bringing a bad faith claim against the Fund. In cases challenging legislation under the equal protection clause, the party seeking to overturn the legislation must show a "disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." Ross v. Moffitt, 417 U.S. 600, 609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974). The fundamental purpose of the clause is to generally insure that *448 "all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920). According to the plaintiffs, the provisions of the Act place them within "the only class of judgment debtors [sic] in Kansas who are denied the legal right to pursue a bad-faith claim against a defendant's insurer." (Pltfs.' Motion & Brief, Dkt. No. 269 at 87.)
Because the challenged statutes do not affect a fundamental right or rely upon suspect classifications such as race, they must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Communications, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). A higher level of scrutiny may be appropriate when the state restricts a fundamental such as a vested property right, but such a level of review is not warranted simply because the legislature has somehow impaired a common law right of action. See New York Central R. Co. v. White, 243 U.S. 188, 197-98, 37 S.Ct. 247, 250-51, 61 L.Ed. 667 (1917); Munn v. Illinois, 94 U.S. (4 Otto) 113, 134, 24 L.Ed. 77 (1876). Although the plaintiffs, in the absence of the challenged provisions of the Act, may have possessed a generalized common law right to pursue a bad faith claim against a defendant's insurer, this does not amount to a fundamental right for purposes of equal protection. The test to be applied, therefore, is whether "the classification at issue bears some fair relationship to a legitimate public purpose." Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).
In resolving constitutional challenges to various "reform" statutes adopted in Kansas, courts have refused to impose heightened scrutiny. Applying a rational basis standard, the Kansas Supreme Court recently upheld limitations on noneconomic damages created by K.S.A. 60-19a01, Samsel v. Wheeler Transport Services, 246 Kan. 336, 789 P.2d 541 (1990), as well as the vitiation of the common law doctrine of respondeat superior in cases involving health care providers pursuant to K.S.A. 40-3403(h). Even the earlier cases which struck down aspects of the reform agenda applied a rational basis test. Thus, attempts by the state legislature to abrogate the collateral source rule in actions against health care providers were struck down as lacking any rational basis in Farley v. Engelken, 241 Kan. 663, 740 P.2d 1058 (1987), and Wentling v. Medical Anesthesia Services, 237 Kan. 503, 701 P.2d 939 (1985). More recently, the legislature enacted K.S.A. 60-3802 (1992 Supp.), which abrogates the traditional collateral source rule in cases in which the plaintiff seeks recovery in excess of $150,000.00. This provision was struck down as a violation of equal protection in Thompson v. KFB Ins. Co., 252 Kan. 1010, 850 P.2d 773 (1993), where the court found a complete absence of any facts justifying the creation of different rules based upon the amount of damages claimed by the plaintiff. And in Stephenson v. Sugar Creek Packing, 250 Kan. 768, 830 P.2d 41 (1992), the court struck down as unconstitutional a provision of the state workers compensation law which created a substantial difference in the amount of compensation on the basis of whether the injury occurred as a result of a single trauma or a repetitive use injury. The court held that it was irrational to create different classes among injured workers on the basis of the manner in which they received their injury.
Federal courts addressing similar issues have adopted a rational basis approach.[3] Thus, in Brubaker v. Cavanaugh, 741 F.2d 318 (10th Cir.1984), the Tenth Circuit upheld another portion of the malpractice "reform" legislation adopted in Kansas in 1976 against an equal protection challenge. The plaintiff argued that K.S.A. 60-513 violated equal protection *449 by creating a separate, shorter statute of limitations period for actions against health care providers. The court found that a rational basis existed for the separate statute of limitations in the legislature's response to the perceived medical malpractice problem. The court concluded that
a rational relation exists between the shorter limitation period for health care providers and the legitimate objective of providing quality health care in Kansas. Plaintiff recites much evidence that there is no such relation, but he cites nothing which indicates that the legislature's studied choice, made in a context in which all interested parties are able to contribute, was irrational.
741 F.2d at 321.
This court reached a similar conclusion with regard to that portion of the "reform" legislation which abrogated the collateral source evidence rule in certain actions involving health care providers in Crowe v. Wigglesworth, 623 F.Supp. 699 (D.Kan.1985). In Crowe, the court was not convinced that the legislature's conclusions regarding the so-called insurance crisis were correct:
What is apparently so clear to the medical profession, the insurance industry, their respective lobbyists, and the Legislature is a matter of deep and growing concern to this Court as well as a number of commentators and other courts across the country. In the Legislature's haste to remedy the situation, it has overlooked or, more likely, ignored the fundamental cause of the so-called crisis: it is the unmistakable result not of excessive verdicts, but of excessive malpractice by health care providers.
623 F.Supp. at 706. Nonetheless, the court upheld the modified collateral source rule against an equal protection challenge, finding that the legislature's conclusions could not be deemed to be wholly irrational. The state legislature, this court held, could "reasonably conclude that insofar as the size of medical malpractice verdicts allegedly affects the so-called crisis, an effort to more closely relate those verdicts to the actual loss suffered by plaintiffs would offer the malpractice insurance companies some relief." Id. at 705.
Finally, the court reached the same conclusion in Ferguson v. Garmon, 643 F.Supp. 335 (D.Kan.1986). The court expressed strong doubts as to the existence of any medical malpractice crisis, or whether any such crisis was caused by excessive verdicts, noting that poor business decisions of the insurance companies during the 1970s were an equal, if not greater, cause of the increase in medical malpractice insurance premiums. 643 F.Supp. at 340. But the court found that it could not substitute its judgment for that of the legislature, and concluded that it was "not irrational" for the legislature to believe that modifying the collateral source rule could advance the legitimate state interest of protecting the availability and quality of health care in Kansas. Id. at 341.
The court finds that the challenged portions of the Act are rationally related to the legitimate state purpose of promoting access to affordable medical care. The underlying purpose of K.S.A. 40-3412 was identified by the supreme court in its answer to the certified questions. In upholding the statute against the plaintiffs' state constitutional attacks, the court identified the potential concern that permitting bad faith claims against the Fund could cause the Fund to increase its surcharges, thereby driving health care providers from the state.
Consequently, the Fund's immunity from bad faith claims is rationally related to the State's interest in keeping malpractice rates low so that health care providers will practice in Kansas. Moreover, the Fund's immunity from bad faith claims is rationally related to the State's interest in keeping the Fund economically viable so a medical malpractice victim is guaranteed to recover at least a part of his or her judgment against a negligent health care provider.
Aves, 906 P.2d at 656. The court acknowledged the plaintiffs' counterargument, that the absence of a bad faith remedy could cause some doctors to leave the state, but concluded that the ultimate merits of the issue were irrelevant; what controlled was that the state had presented "some facts that demonstrate the unequal treatment is rationally related to a legitimate State interest." Id.
*450 In the present case, the plaintiffs have presented a large volume of evidence which can be read in support of their contention that the state legislature's adoption of the relevant portions of K.S.A. 40-3412 and 40-3403 was a misguided response to a nonexistent crisis. The question before the court, however, is not whether the legislature's decision in enacting these statutes reflects the actions of enlightened wisdom, but whether the legislature could have reasonably believed that the approach it chose would further the goal of promoting the access of Kansans to affordable medical care. The court concurs with the Kansas Supreme Court, and finds that the immunization of the Fund from bad faith claims is reasonably related to an appropriate goal of state policy.
Finally, the plaintiffs argue, briefly, that K.S.A. 40-3412 and 40-3403 violate the due process guarantee of the Fourteenth Amendment. (Pltfs.' Motion & Brief, Dkt. 269 at 82-83.) The plaintiffs contend that by denying them an action against the Fund for bad faith, the legislature has deprived them of an important property right. However, as noted earlier in the context of the plaintiffs' equal protection, the plaintiffs' generalized, common law right of action for bad faith is not a vested property right protected by the due process clause. "The Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object, despite the fact that otherwise settled expectations may be upset thereby." Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978) (citations and internal quotation marks omitted). See also Munn v. Illinois, 94 U.S. (4 Otto) 113, 24 L.Ed. 77 (1876). Accordingly, the adoption of K.S.A. 40-3412 and 40-3403 does not violate the plaintiffs' right to due process of law.
IT IS ACCORDINGLY ORDERED this 18th day of January, 1996, that the Fund's combined motion to dismiss for lack of jurisdiction and for failure to state a claim (Dkt. No. 199) is granted as to the failure to state a claim. Plaintiffs' motions to determine constitutionality or questions of law (Dkt. Nos. 202 & 269) are hereby denied.
NOTES
[1] In combination with their response to the Fund's motion to dismiss, the plaintiffs have filed a motion for summary judgment which sets forth at length and in great detail the historical background of this case and of the Act. The court finds that summary judgment is not proper at this preliminary stage of the garnishment action, prior to substantial discovery by the parties, and is, in any event, moot in light of the court's decision regarding the other motions before the court.
[2] Nor is the result altered by the fact that the Kansas Supreme Court's decision of the certified questions occurred after the date of the alleged contractual relationship. The contract clause only applies to legislative acts which significantly impair an existing contract  subsequent judicial decisions which interpret such legislation will not be deemed to be an interference with an existing contractual relationship. New Orleans Water Works v. Louisiana Sugar Refining, 125 U.S. 18, 8 S.Ct. 741, 31 L.Ed. 607 (1888); Kinney v. Connecticut Judicial Dept., 974 F.2d 313 (2d Cir.1992).
[3] The Fund also relies upon the decision of the United States Supreme Court in Fein v. Permanente Medical Group, 474 U.S. 892, 106 S.Ct. 214, 88 L.Ed.2d 215 (1985), where the Court dismissed an appeal from a decision of the California Supreme Court upholding a cap on noneconomic damages in a medical malpractice action, holding that the appeal did not present a substantial federal question. The Fund contends that the dismissal of the appeal on this basis reflects a decision on the merits here. This court, however, has previously determined that the dismissal of the appeal in Fein does not establish clear precedential authority on the issue. Guest v. United States, 1992 WL 25458 (D.Kan. Jan. 10, 1992).