Elliott REID, Appellant,

v.

David WILLIAMS, M.D., Appellee.

No. S–7839.

Supreme Court of Alaska.

Oct. 2, 1998.

P. Dennis Maloney, Maloney & Haggart, Anchorage, for Appellant.

Roger F. Holmes, Biss & Holmes, Anchorage, for Appellee.

Before COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

## I. *INTRODUCTION*

Elliott Reid sued Dr. David Williams for medical malpractice and prevailed at trial. Applying AS 09.55.548(b), the superior court

subtracted Reid's medical expenses paid by Reid's insurer from the jury's medical expenses award. Concluding that it was a reasonable legislative response to a perceived medical malpractice insurance crisis, we reject Reid's argument that the statute violates his substantive due process rights. Concluding that the classification between doctors and other tort defendants bears a fair and substantial relation to attainment of a legitimate government objective, we reject his argument that the statute violates his equal protection rights. We also conclude that it was not an abuse of discretion to deny Reid's motion for enhanced attorney's fees and actual costs. We therefore affirm on all issues.

## II.  FACTS AND PROCEEDINGS

Complaining of a sense of fullness in his ear, Elliott Reid was seen by Dr. David Williams in 1992. Williams diagnosed a perilymphatic fistula and performed surgery. A small bone in Reid's inner ear was dislocated during the surgery.

Reid brought a medical negligence action against Williams. A court-appointed Expert Advisory Panel (Panel) of three local physicians evaluated Williams's care. It concluded that Williams's treatment was inappropriate because Reid's symptoms did not support the diagnosis, and that the medical care injured Reid.

In December 1995 Reid served Williams with a $75,000 offer of settlement. Reid filed an amended complaint the next day, adding claims for unfair business practices, fraud, breach of the duty of good faith and fair dealing, and punitive damages. A twelve-day trial commenced in May 1996. At the close of Reid's case, the superior court dismissed the claims added in the amended complaint.

The case went to the jury on the negligence claim.

The jury found that Williams was negligent in deciding to perform the surgery, and that his negligence was a legal cause of injury to Reid. The jury awarded Reid damages of $25,000, including $6,553 for past medical expenses.

As the prevailing party, Reid moved for an award of enhanced attorney's fees and actual costs. The court denied Reid's motion for enhanced attorney's fees and ordered that the fees be calculated according to the Civil Rule 82(b) formula on a "Contested With Trial" basis. The fees awarded were $3,790.82 (20% of $18,954.10). The court denied Reid's motion to recover actual costs and awarded costs "in accordance with the rules as determined by the clerk." Reid was eventually awarded $9,464.51 in costs.

Citing AS 09.55.548(b), Williams argued that Reid's jury award for past medical expenses should be reduced by approximately $6,000 because Reid's insurer had paid his medical bills. The superior court reduced the award for past medical expenses from $6,553 to $507.10, the amount of medical expenses not paid for by Reid's insurer.

Reid appeals these rulings.

## III.  DISCUSSION

### A.  The    Constitutionality    of    AS 09.55.548(b)

The superior court reduced the damage award for past medical expenses by the amount Reid's insurer paid. The court applied AS 09.55.548(b),[1] which abrogates the collateral source bar found in AS 09.17.070. Reid claims that AS 09.55.548(b) violates his constitutional rights to substantive due pro-

---

1. AS 09.55.548(b) states that,
   Except when the collateral source is a federal program that by law must seek subrogation and except death benefits paid under life insurance, a claimant may only recover damages from the defendant that exceed amounts received by the claimant as compensation for the injuries from collateral sources, whether private, group, or governmental, and whether contributory or noncontributory. Evidence of collateral sources, other than a federal program that must by law seek subrogation and

the death benefit paid under life insurance, is admissible after the fact finder has rendered an award. The court may take into account the value of claimant's rights to coverage exhausted or depleted by payment of these collateral benefits by adding back a reasonable estimate of their probable value, or by earmarking and holding for possible periodic payment under (a) of this section that amount of the award that would otherwise have been deducted, to see if the impairment of claimant's rights actually takes place in the future.

cess and equal protection. He asks us to set aside the trial court's order offsetting his damages by the amount paid by his medical insurance.[2]

### 1. *Waiver*

■■■ The parties dispute whether Reid waived any constitutional challenge by only briefly stating the constitutional argument to the court below. We will not ordinarily consider issues unless they were raised in the trial court. *Brooks v. Brooks*, 733 P.2d 1044, 1053 (Alaska 1987).

Reid only briefly identified his due process and equal protection arguments. He articulated his constitutional challenge in a footnote in a trial court memorandum, and alluded to the alleged constitutional violation in a later memorandum. Reid cited no cases or legal authority. He provided no analysis of the issue apart from asserting that the statute was unconstitutional because it treats medical care providers differently from other defendants.

Despite the brevity of Reid's superior court arguments, we will consider the constitutional issues. The arguments do not depend on new or controverted facts, and are identical to the theory that Reid presented below. *See O'Neill Investigations, Inc. v. Illinois Employers Ins.*, 636 P.2d 1170, 1175

n. 7 (Alaska 1981).[3] Moreover, Williams will not be prejudiced if we consider the statute. Williams responded to the merits of Reid's constitutional arguments during the proceedings below, and the parties have fully briefed the issues on appeal.

### 2. *Substantive due process*

■■ Reid argues that reducing the damage award under AS 09.55.548(b) violated his substantive due process rights guaranteed by article I, section 7 of the Alaska Constitution.[4]

■■ The party asserting a substantive due process challenge must demonstrate that the statute bears no reasonable relationship to a legitimate governmental purpose. *See, e.g., Chiropractors for Justice v. State*, 895 P.2d 962, 968 (Alaska 1995); *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 351 (Alaska 1988).[5] To determine whether reducing Reid's damages violated his substantive due process rights, we first examine the stated purpose of AS 09.55.548(b) and assess whether the statute is reasonably related to that stated purpose.

Alaska Statute 09.55.548(b) was enacted in 1976 as part of a comprehensive medical malpractice reform package intended to alleviate a perceived crisis in medical malpractice insurance costs.[6] Although there is little

---

**2.** Issues of constitutional interpretation are questions of law which we review *de novo*. *Revelle v. Marston*, 898 P.2d 917, 925 n. 13 (Alaska 1995).

**3.** *See also Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 115 (Alaska 1990); *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

**4.** "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7.

**5.** We have described the analysis for determining a substantive due process claim as follows:

Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose. It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people. The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based on some rational policy.

A court's inquiry into arbitrariness begins with the presumption that the action of the legislature is proper. The party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification. *Concerned Citizens v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974) (citations omitted).

**6.** One text describes the medical malpractice insurance crisis as follows:

In response to the recent vast increase in the number of medical malpractice actions brought against physicians, hospitals, and related personnel, the necessary costs of defense, and high damage awards, many malpractice liability insurers have either greatly raised their premiums or declined to offer coverage. As a result, some physicians and other health

specific discussion of AS 09.55.548(b) in the legislative history, the House and Senate committee files for the 1976 medical malpractice reform legislation show that AS 09.55.548(b) was part of "a comprehensive system to furnish hospitals and individual health care providers with medical malpractice insurance." *Plumley v. Hale*, 594 P.2d 497, 498–99 n. 3 (Alaska 1979) (citing Chapter 102 SLA 1976).[7]

In *Keyes v. Humana Hospital Alaska, Inc.*, 750 P.2d 343, 351–52 (Alaska 1988), we upheld a different section of the medical malpractice reform statute in the face of a substantive due process challenge. The plaintiff in *Keyes* challenged AS 09.55.536, which required her to present her case to an expert advisory panel. *See id.* We noted that "[i]t is virtually beyond dispute" that the panel review procedures were enacted "to alleviate the effects of the malpractice insurance crisis." *Id.* We concluded that AS 09.55.536 was a reasonable legislative response to the perceived medical malpractice insurance crisis, and thus did not deny substantive due process. *Id.* at 352.

Alaska Statutes 09.55.548(b) and 09.55.536 were part of the same medical malpractice reform package, Chapter 102 SLA 1976, and were enacted for the same purpose, to alleviate the medical malpractice insurance crisis. *See* AS 09.55.548(b); AS 09.55.536; *Plumley*, 594 P.2d at 498–99 n. 3. As we held in *Keyes*, the desire to alleviate the medical malpractice insurance crisis was a legitimate govern-

mental purpose behind the medical malpractice reform statutes.

We next consider whether AS 09.55.548(b) is reasonably related to that purpose. By abrogating the collateral source rule, AS 09.55.548(b) reduces the medical malpractice damage awards for which some health care providers and their insurers are liable. It is reasonable to conclude that reducing damage awards would help reduce the cost of medical malpractice insurance. We conclude that alleviating a perceived medical malpractice insurance crisis was a legitimate public purpose for enacting AS 09.55.548(b), and that the statute was reasonably related to that goal.

Reid cannot make out his substantive due process claim because he has not disproved the factual justification for the statute. *See Keyes*, 750 P.2d at 352. Reid concedes that responding to a perceived medical malpractice insurance crisis was a legitimate government purpose. He fails to disprove the relationship between the statute and medical malpractice insurance rates, and instead attacks the statute on policy grounds. He argues that the statute benefits negligent doctors who injure insured patients, and that this benefit for negligent doctors is not reasonably related to the governmental purpose of controlling medical malpractice insurance rates. He further argues that the statute shifts plaintiffs' medical expenses to plaintiffs, or their employers, through increased insurance premiums.[8] Reid's arguments fail

---

care providers have threatened to limit or curtail their practices and services, creating what has been referred to as a medical malpractice insurance "crisis."

In order to meet this challenge and to continue to provide proper health care for their citizens, a number of states have enacted remedial legislation. In general, the expressed purposes of these statutes are to make professional health care insurance available at a reasonable cost, and to establish a system through which a victim who has sustained injury or death caused by a health care provider can be assured of a prompt adjudication of the claim and a fair and reasonable recovery.

David W. Louisell & Harold Williams, 2 *Medical Malpractice* ¶ 18.02, at 18–10 to 18–11 (1992 & Supp.1993).

7. Legislation abrogating the common law collateral source rule was enacted throughout the United States in order to alleviate the insurance

crisis. *See id.* ¶¶ 18.02, 18.05 & Appendix B (discussing and cataloging twenty-three state statutes that abrogate collateral source rule for malpractice suits); *see also* Michael D. McCafferty & Steven M. Meyer, *Medical Malpractice: Bases of Liability* § 5.07, at 139 (1985 & Supp.1996) (discussing different state approaches to reducing damages by payments from collateral sources); James J. Watson, Annotation, *Validity and Construction of State Statute Abrogating Collateral Source Rule as to Medical Malpractice Actions*, 74 A.L.R.4th 32, 37 (1989).

8. A version of this argument has been successful in equal protection challenges to statutes that abrogate the collateral source rule for medical malpractice cases. Courts have invalidated the statutes under heightened scrutiny analysis, in part because plaintiffs were burdened by the restrictions on their rights to recover damages, and this burden unreasonably conferred upon

to disprove the relationship between the statute and the medical malpractice insurance rates. Even if the statute unwisely benefits negligent doctors or shifts the costs away from defendants, the statute may still reduce medical malpractice insurance rates. *See Kenai Peninsula Borough*, 527 P.2d at 452 (stating that it is "not a court's role to decide whether a particular statute or ordinance is a wise one" in substantive due process analysis).

We conclude that Reid has not met the burden of establishing that there is no "conceivable legitimate public policy" for the enactment of the statute.[9] *See Kenai Peninsula Borough*, 527 P.2d at 452. His substantive due process challenge therefore fails.[10]

### 3. *Equal protection*

■ Reid argues that AS 09.55.548(b) violates the equal protection clause of the Alaska Constitution[11] because it unlawfully discriminates between negligent doctors and other tort defendants.

■ A medical malpractice plaintiff's right to damages is an economic interest, which traditionally receives only minimal protection under our equal protection analysis. *See, e.g., Chiropractors for Justice*, 895 P.2d at 969 (applying minimum level of judicial scrutiny to equal protection claim regarding health care provider's economic interest in receiving payment under Workers' Compensation Act). Reid has not demonstrated that the statute discriminates against a class that receives heightened protection under the Equal Protection Clause. We therefore review AS 09.55.548(b) under the lowest level of equal protection scrutiny.[12] Because the interest affected is economic and receives minimal judicial protection, the legislative classification must bear only a "fair and substantial relation" to attaining "legitimate" government objectives.[13]

In *Keyes* we considered an equal protection challenge to a different section of the medical malpractice reform package, AS 09.55.536, which required medical malpractice plaintiffs to present their cases to expert advisory panels. *See Keyes*, 750 P.2d at 357–

---

malpractice defendants the benefit of a limitation on liability for damages. *See* cases cited *infra* note 16.

9. Courts in other jurisdictions have considered substantive due process attacks on statutes that similarly abrogate the collateral source rule for medical malpractice suits. *See* Watson, *supra* note 7, at 48–50. Several courts have found the statutes to be a reasonable legislative response to a perceived crisis in medical malpractice insurance rates. *See id.; see also Ferguson v. Garmon*, 643 F.Supp. 335, 342 (D.Kan.1986); *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744, 753 (Ariz.1977); *Fein v. Permanente Med. Group*, 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d 665, 684–86 (Cal.1985); *Bernier v. Burris*, 113 Ill.2d 219, 100 Ill.Dec. 585, 497 N.E.2d 763, 775 (Ill. 1986). *But see Arneson v. Olson*, 270 N.W.2d 125, 137, 133 (N.D.1978) (invalidating the provision as "arbitrary and unreasonable and discriminatory," and lacking in "close correspondence between statutory classification and legislative goals").

10. Williams did not argue on appeal that Reid had no property interest in a damage award against Williams entitled to due process protection. We would have felt compelled to reach that issue, or require supplemental briefing, before reaching any conclusion that the statute was invalid with respect to Reid because it violated his due process rights. *Cf. Eastin*, 570 P.2d at

753 (observing that abrogation of the collateral source rule did not deprive the medical malpractice claimant of any property interest accorded protection by the due process clause of the United States Constitution); *Fein*, 211 Cal.Rptr. 368, 695 P.2d at 686 (stating that a plaintiff had no vested interest in a particular measure of damages and thus the fact that the provision might reduce a plaintiff's award did not render the provision unconstitutional so long as the measure was rationally related to a legitimate government interest).

11. Article I, section 1 of the Alaska Constitution provides in relevant part that "all persons are equal and entitled to equal rights, opportunities, and protection under the law."

12. *See McConkey v. Hart*, 930 P.2d 402, 407–08 (Alaska 1996) (reviewing under rational basis review a statute that allegedly discriminated between tort victims).

13. *See Chiropractors for Justice v. State*, 895 P.2d 962, 972 (Alaska 1995); *Pan–Alaska Constr., Inc. v. State*, 892 P.2d 159, 162 (Alaska 1995); *see also Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994) (reviewing statute that created classifications between different tort defendants under "fair and substantial relationship" test).

58.[14] We upheld the statute under low-level scrutiny, concluding that it bore a fair and substantial relation to the statute's legitimate purposes of alleviating the effects of the malpractice insurance crisis, and reducing the cost and improving the availability of health care. *See id.* at 352, 357–58. We noted that the plaintiff was unable to show that the statute was unlikely to reduce litigation over malpractice claims. *See id.* at 358.

The analysis we followed and the conclusion we reached in *Keyes* apply here as well, as AS 09.55.536 and AS 09.55.548(b) were enacted as part of the same reform package. The interests involved and the greater statutory purpose, i.e., to control medical malpractice insurance costs and increase the availability of health care, are identical. We were persuaded by the legislative history in *Keyes*, and we are persuaded by this same legislative history today. Reducing medical malpractice damage awards by the amount received by a malpractice victim's insurer lessens the liability of health care providers. This in turn reduces the cost of insuring the health care providers. We therefore conclude that AS 09.55.548(b) bears a fair and substantial relation to the goal of alleviating the medical malpractice insurance crisis. *Cf. Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744, 753 (Ariz.1977) (stating that "[b]y scaling down the size of jury verdicts by the amount of collateral benefits the plaintiff may have received, the legislature could reasonably assume that a reduction in premiums would follow").

Reid states that we rejected an argument that reducing insurance costs was a legitimate purpose in *Alaska Pacific Assurance Co. v. Brown,* 687 P.2d 264, 272 (Alaska 1984) ("We hold that the asserted goal of lowering insurance premiums can have no independent force in the state's attempt to meet its burden under the equal protection clause."). *Brown* is inapposite. We there evaluated a statute that adjusted workers' compensation benefits paid to recipients who moved out of state. *Id.* The statute burdened the constitu-tional right to travel, and was therefore subjected to a "very high" level of scrutiny. *Id.* at 273–74. No analogous fundamental right is burdened by AS 09.55.548(b). Our observation in *Brown* that "savings will always be achieved by excluding a class of persons from benefits they would otherwise receive" is less significant when the statute creating such "savings" is subject to rational basis review rather than "very high" scrutiny. *See Brown,* 687 P.2d at 272.

Reid also argues that AS 09.55.548(b) fails the "nexus test" under *Turner Construction Co. v. Scales,* 752 P.2d 467, 470–72 (Alaska 1988). In *Turner* we invalidated a statute that provided a six-year statute of repose on suits against design professionals. Applying the "fair and substantial relationship test," we noted that the statute was intended to encourage construction by shielding design professionals from future liability, and concluded that this governmental purpose was legitimate. *Id.* at 471. The statute, however, shifted liability from design professionals to owners and material suppliers. We reasoned that any incentive to build that the statute might give design professionals was offset by the disincentive to build that the statute gave owners and material suppliers. We invalidated the statute because it discouraged these third parties from building and therefore interfered with the statute's stated purpose of encouraging construction. *Id.* at 472.

*Turner* is distinguishable from the instant case. *Turner* turned upon the fact that the statute's effect on third parties actually chilled construction, an effect that was at odds with the stated purpose of the statute. Here, there is no chilling effect that interferes with the stated purpose of the statute, which is to decrease the costs of medical malpractice liability insurance for health care providers. The central flaw in *Turner* was that the statute intended to encourage construction had the opposite effect. Reid has not shown that this statute, which was in-

**14.** As discussed above, AS 09.55.548(b) was part of a comprehensive measure adopted to control the rising costs of medical malpractice insurance and to furnish hospitals and individual health care providers with medical malpractice insur-ance. *See Plumley v. Hale,* 594 P.2d 497, 498 n. 3 (Alaska 1979). We consider the challenged provision in light of the purposes of the entire act. *See Chiropractors for Justice,* 895 P.2d at 969.

tended to lower malpractice insurance rates, actually has the opposite effect and instead raises malpractice insurance rates. *Turner* is therefore inapposite.

Reid seems to imply that AS 09.55.548(b) may have become unconstitutional because the conditions which potentially justified its enactment in 1976 no longer exist or have been ameliorated. Reid has not shown that there is merit to that position. We must also assume that the statute helped alleviate the conditions perceived by the legislature in 1976; to abrogate the statute would potentially restore conditions that convinced the legislature to adopt the statute in the first place.

For these reasons, Reid's equal protection challenge fails. We note that courts elsewhere have discussed equal protection attacks on statutes that abrogate the collateral source rule for medical malpractice suits. Courts that have reviewed the statutes under a version of the rational basis test have found that the statutory distinctions between malpractice plaintiffs and defendants and other tort plaintiffs and defendants were reasonably related to the legislative objectives of lowering the costs of medical malpractice actions, and ensuring the continued availability of health care for the public.[15] By contrast, courts that have employed a more stringent standard of equal protection review, such as "heightened scrutiny" or "means scrutiny," have invalidated statutes that abrogate the collateral source rule for medical malpractice defendants.[16]

Reid's other equal protection arguments were raised for the first time on appeal, and are therefore waived. *See Arnett v. Baskous,* 856 P.2d 790, 791 n. 1 (Alaska 1993).

**B.** *Reid's Claim for an Enhanced Attorney's Fees Award*

Reid, the prevailing party, was entitled to an award of attorney's fees under Rule 82. A schedule fixes attorney's fees at twenty percent of the first $25,000 of a money judgment in a case that is "Contested With Trial." Alaska R. Civ. P. 82(b)(1). Following an amendment that became effective in 1993, a trial court may deviate from a scheduled award if, upon considering itemized factors, it "determines a variation is warranted." Alaska R. Civ. P. 82(b)(3). A trial court departing from the schedule must "explain the reasons for the variation." *Id.* The superior court awarded Reid attorney's fees under Rule 82(b)(1), and did not issue written findings.

■ Reid first contends that the lack of findings renders the superior court's award unreviewable. We disagree. The superior court was not required to issue findings of fact or otherwise explain its award because it awarded the attorney's fees prescribed by Rule 82(b)(1). There is a presumption that a prevailing plaintiff recovering a money judgment will receive fees in accordance with the schedule. *See Babinec v. Yabuki,* 799 P.2d 1325, 1337 (Alaska 1990) ("Attorney's fees awards made pursuant to the schedule of Rule 82 are presumptively correct."). Entry of the Rule 82(b)(1) award without fact findings was not error, and does not prevent us from reviewing the decision.

■ Reid also argues that the superior court's refusal to award enhanced attorney's fees was an abuse of discretion. We address Reid's contentions in turn.[17]

---

**15.** *See, e.g., Ferguson v. Garmon,* 643 F.Supp. 335, 342 (D.Kan.1986); *Baker v. Vanderbilt Univ.,* 616 F.Supp. 330, 332 (M.D.Tenn.1985); *Eastin,* 570 P.2d at 753; *Fein,* 211 Cal.Rptr. 368, 695 P.2d at 684–86; *Pinillos v. Cedars of Lebanon Hosp. Corp.,* 403 So.2d 365, 367–68 (Fla. 1981); *Bernier,* 100 Ill.Dec. 585, 497 N.E.2d at 768, 775; *Rudolph v. Iowa Methodist Med. Ctr.,* 293 N.W.2d 550, 559 (Iowa 1980); *see also Lambert v. Sisters of Mercy Health Corp.,* 369 N.W.2d 417, 423–24 (Iowa 1985) (upholding statute under rational basis review even when hospital is self-insured and does not pay malpractice insurance premiums).

**16.** *See, e.g., Farley v. Engelken,* 241 Kan. 663, 740 P.2d 1058, 1063–66, 1068 (Kan.1987); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 831, 835–36 (N.H.1980); *Arneson v. Olson,* 270 N.W.2d 125, 133, 137 (N.D.1978).

**17.** "An award of attorney's fees will only be reversed for an abuse of discretion, which exists if the award is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive." *Hughes v. Foster Wheeler Co.,* 932 P.2d 784, 793 (Alaska 1997).

#### 1. *The parties' asymmetrical risks*

Reid argues that Rule 82 unfairly subjects plaintiffs and defendants to asymmetrical risks: he claims that if Williams had prevailed, Williams's Rule 82(b)(2) fees award would have been fifteen-to-twenty-five times greater than Reid's. Reid claims that this disparity between the prospective awards renders the trial court's $3,790.82 award "manifestly unreasonable"; he requests award of an "amount that approximates the lower end of the amount that Dr. Williams would have been entitled to under Alaska R. Civ. P. 82(b)(2) had he won."

The asymmetry noted by Reid is an inherent result of using two different methods (percentage of damage award for prevailing parties who recover a money judgment and percentage of incurred attorney's fees for prevailing parties who do not) to calculate the presumptive Rule 82 attorney's fees awards. This asymmetry has its converse: assume a claimant recovers damages of $500,000 at trial. Ignoring prejudgment interest, Rule 82(b)(1) presumes an attorney's fee award of $52,500. Whether the trial lasts two days or twenty, the rule presumes the same award. If the defendant were to prevail in that case after a two-day trial (assuming hypothetically twenty-eight additional days of pretrial preparation) the presumptive Rule 82(b)(2) award would be about $10,800 (30% × 30 days × 8 hours/day × $150/hour). This would be substantially less than the prevailing claimant's fee award. The disparity is the product of using, by necessity, two different methods to measure the presumptive awards.

This necessity arises out of the conjunction of the purpose of Rule 82—to partially reimburse prevailing parties for the fees they must pay their attorneys—and the difference in how these classes of litigants usually compensate their attorneys. Usually parties seeking money recoveries in tort cases pay their attorneys under contingent fee agreements requiring them to pay their counsel twenty-five to forty percent of the total recovery. And usually civil litigants not seeking money judgments pay their lawyers on an hourly basis. The presumptive Rule 82(b)(1) and (b)(2) fee awards bear some relationship to the fees these prevailing parties actually pay their attorneys. Using the example of the $500,000 recovery, the presumptive award of $52,500 is probably about twenty-five to thirty percent of the lawyer's contingent fee. This corresponds to the presumptive Rule 82(b)(2) percentage (thirty percent of actual fees if a case goes to trial).

Thus, any asymmetry between attorney's fees awards to these classes of parties is the natural consequence of using two different methods to calculate these classes of parties' Rule 82 awards. This asymmetry is usually both acceptable and benign. The asymmetry inherent for "normal" cases does not in and of itself justify a departure from Rule 82(b)(1). But circumstances in a given case may bring the factors listed in Rule 82(b)(3) into play. Although Rule 82(b)(3) does not specify asymmetry as a basis for relief, it lists ten factors—among them, "the complexity of litigation," "the length of trial," "vexatious or bad faith conduct," and "the relationship between the amount of work performed and the significance of the matters at stake"—that adequately address the pertinent considerations. We discuss some of these factors below.

#### 2. *Williams's alleged intransigence and intent to deter future litigants*

A trial court may depart from the Rule 82(b)(1) schedule if a party is guilty of "vexatious or bad faith conduct." Alaska R. Civ. P. 82(b)(3)(G). Reid alleges that Williams "escalated" litigation costs by refusing to settle, and that Williams's insurance carrier pursued a "scorched earth litigation policy" to deter future litigants. Williams contends that Reid's high expenses are due to Reid's litigation strategy, which complicated a "garden variety medical malpractice case."

Reid has not shown that the superior court abused its discretion by denying Reid's motion for enhanced attorney's fees on this ground. The superior court was in the best position to determine whether a party's behavior was excessively litigious or in bad

**462**

faith.[18] The superior court also had discretion to consider Reid's unsuccessful claims when it awarded attorney's fees. *See Alaska State Bank v. General Ins. Co.*, 579 P.2d 1362, 1369 (Alaska 1978) (stating that it was not manifestly unreasonable for the court to take into account that it ruled against the prevailing party on one of the contested issues when determining attorney's fees and costs).

The superior court did not abuse its discretion by refusing to award enhanced attorney's fees based on Williams's refusal to settle. *See Van Dort v. Culliton*, 797 P.2d 642, 645 (Alaska 1990) (stating that trial court may not consider settlement negotiations as reasons to reduce or increase an attorney's fee award). Rule 68 did not apply, and the final judgment in the case was much less than the settlement offers. Rule 68 applies when "the judgment finally rendered by the court is not more favorable to the offeree than the offer." Alaska R. Civ. P. 68(b).

### 3. *The complexity of this medical malpractice action*

A lawsuit's complexity may justify departure from the Rule 82(b)(1) schedule. Alaska R. Civ. P. 82(b)(3)(A). Reid argues that medical malpractice cases are more complex than ordinary negligence cases, and that this was an unusually complex malpractice case. The complexity of this case, however, did not mandate enhanced attorney's fees. *See Moses v. McGarvey*, 614 P.2d 1363, 1370 (Alaska 1980) (stating that complexity is only one factor, which alone does not justify full attorney's fees). The superior court did not abuse its discretion by failing to award enhanced attorney's fees based on this factor.

### 4. *The alleged chilling effect of the nominal award*

Reid argues that the nominal award of attorney's fees will deter access to the courts and discourage non-wealthy individuals from litigating good faith claims. He contends that individuals cannot seek judicial redress if the cost of litigating outweighs the damages awarded. Williams argues that Reid simply miscalculated the value of the case and that Williams should not shoulder the expense of Reid's miscalculation.

We have expressed concern that "financially ruinous" fee awards against good faith civil litigants could deter access to the courts. *See, e.g., Malvo v. J.C. Penney Co.*, 512 P.2d 575, 586–88 (Alaska 1973); *see also Van Huff v. Sohio Alaska Petroleum Co.*, 835 P.2d 1181, 1189 (Alaska 1992) (Matthews, J., dissenting); *Bozarth v. Atlantic Richfield Oil Co.*, 833 P.2d 2, 5–7 (Alaska 1992) (Matthews, J., dissenting).

In those cases, we were concerned that fee awards levied against *losing* litigants could deter access to the courts. This case is different because it involves a claim that inadequate fee awards to *winning* litigants will deter access to the courts. Reid in essence argues that he should not have to bear his own litigation expenses, which he claims are so high that Williams should be required to reimburse him. In comparison, the unsuccessful plaintiffs in *Malvo* and *Bozarth* claimed that they should not have to bear the defendants' litigation expenses, which they claimed were financially ruinous.

Although it may seem that both situations equally chill judicial resolution of disputes, we see a fundamental difference. In *Malvo* and *Bozarth*, the question was whether it was an abuse of discretion to shift very substantial litigation expenses to the losing plaintiffs. Here the question is whether it was an abuse of discretion to decline to shift additional expenses from the party that incurred them. Even though a party's litigation expenses are in part the result of the

**18.** *See Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1331 (Alaska 1997) (affirming award of enhanced attorney's fees based on the trial court's finding that the defendant deliberately conducted a excessively litigious defense); *Stone v. International Marine Carriers, Inc.*, 918 P.2d 551, 558 (Alaska 1996) (finding no abuse of discretion when trial court denied prevailing defendant's motion for full attorney's fees when plaintiff "vigorously litigated an unresolved question"); *Wickwire v. McFadden*, 633 P.2d 278, 281 n. 6 (Alaska 1981) (stating that trial court is in best position to determine whether party acted in bad faith for purposes of attorney's fees awards).

opponent's litigation tactics, to a large extent the party has the ultimate control over the way it assesses its case and litigates its position.

Rule 82 already provides protection for the winning litigant who is forced to respond to an opponent's excessive efforts or bad faith litigation tactics. *See, e.g.*, Alaska R. Civ. P. 82(b)(3)(F) ("the reasonableness of the claims and defenses pursued by each side") & (G) ("vexatious or bad faith conduct"). But the record does not compel a conclusion that it was error not to apply this factor here.

Civil Rule 82 also distinguishes between parties in the position of Reid—who was awarded allegedly inadequate attorney's fees—and non-prevailing parties—who must pay attorney's fees to their opponents. A trial court may consider "the extent to which a given fee award may be so onerous to the *non-prevailing party* that it would deter similarly situated litigants from the voluntary use of the courts." Alaska R. Civ. P. 82(b)(3)(I) (emphasis added). Because Reid is the prevailing party, this factor does not justify departing from the Rule 82(b)(1) schedule.

Some of the factors noted by Reid would have justified an enhanced fee award if the superior court had found that they were relevant to this case. It was not obliged to do so, and we conclude that the superior court did not abuse its discretion by declining to deviate from the Rule 82(b)(1) schedule.

### C. *Costs*

■ Finally, Reid argues that the superior court should have awarded him actual costs because he alleges that: (1) Williams escalated the costs by hiring three expert witnesses; (2) it is hard to find an in-state expert, as Alaska physicians will not testify

against each other; and (3) the case was complex.[19]

Civil Rules 79 and 83 and Administrative Rule 7(c) govern costs absent justification for deviation. No rule or case calls for deviation here,[20] and Civil Rule 94 does not require relaxation of the rules.[21] We conclude that the superior court did not abuse its discretion by refusing to award Reid's actual costs. *See also Hickel v. Southeast Conference*, 868 P.2d 919, 931–32 (Alaska 1994) (finding no abuse of discretion when trial court refused to award full expert witness fees); *Municipality of Anchorage v. Frank Coluccio Constr. Co.*, 826 P.2d 316, 331 (Alaska 1992) (stating that prevailing party is limited to expert witness fees specified in Rule 7(c), absent bad faith or reprehensible conduct).

### IV. *CONCLUSION*

For the reasons discussed above, we AFFIRM.

MATTHEWS, C.J., not participating.

---

**19.** We will overturn an award of costs only if the superior court clearly abused its discretion. *Municipality of Anchorage v. Frank Coluccio Constr. Co.*, 826 P.2d 316, 332 (Alaska 1992).

**20.** *See id.* at 331 (stating that complexity of case is irrelevant for purposes of calculating costs).
The trial court may award costs in excess of the Administrative Rule 7(c) guidelines if a prevailing plaintiff demonstrates that the defendant has shown "bad faith or reprehensible conduct." *Id.* (citing *Fairbanks N. Star Borough v. Tundra*

*Tours, Inc.*, 719 P.2d 1020, 1036–37 (Alaska 1986) (overturning award of expert fees in excess of guidelines and stressing that the case did not involve "those extraordinary circumstances where the losing party should be punished")).

**21.** Alaska Rule of Civil Procedure 94 provides: "These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."