DECISION
The plaintiffs have filed a RIGL § 9-2-19 motion requesting that this matter be given priority for expedited hearing. Section 9-2-19
provides that if the court finds that recoverable damages in a medical malpractice action are likely to exceed $100,000.00, then the action is entitled to expedited hearing. However, section 9-2-19
provides that it "is not to be construed so as to preclude adequate time for reasonable discovery." Defendant Tej V. Bansal, M.D. has objected, arguing that the plaintiffs' motion is "premature" and that section 9-2-19 violates the Rhode Island Constitution in various respects: first, that it violates article 1, section 5 in that it "permits medical malpractice litigants to gain an expedited hearing based upon the monetary value of their potential recovery;" second that it violates "equal protection principles" in that it impermissibly creates a favored class of litigants; and third, that it impermissibly encroaches upon the judiciary's independence. Each argument is addressed in turn.
Given that the terms of section 9-2-19 clearly reveal that the General Assembly specifically contemplated that acceleration motions could be filed before discovery was completed, the Court would be hard-pressed to deny this motion as premature. And although it would not be an unreasonable construction of section 9-2-19 to withhold priority until after an adequate time for reasonable discovery had passed, defendant's concerns in that regard are just as readily addressed by the trial-calendar-assignment justice as by the motion-calendar justice. Either could exercise his or her discretion to establish discovery deadlines or a date prior to which a trial accelerated under section 9-2-19 would not commence. There is nothing in section 9-2-19 that prevents the motion-calendar justice and trial-calendar-assignment justice from cooperating with each other in this regard. The Court is thus not constrained by the "prematurity" of plaintiff's motion.
The defendant next argues that section 9-2-19 contravenes the constitutional mandate that justice be obtained "freely, and without purchase." Defendant argues that section 9-2-19 allows a litigant to gain swifter access to justice based solely upon monetary considerations. However, the Court concludes that the purchase contemplated by the Rhode Island constitution is not implicated by section 9-2-19 because, even though monetary considerations admittedly factor into the equation, those monetary considerations have nothing to do with the Court and in no way do such considerations benefit the Court or procure its favor. The purchase clause was directly borrowed from the Magna Carta and "was designed to abolish, not fixed fees, prescribed for the purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor." Perce v. Hallett, 13 R.I. 363, 364 (1881). In that sense, "the king seemed to sell justice and right to some and to delay or deny it to others." Id. at 365. Here, no showing is made that the enactment or practical application of section 9-2-19
has either benefited the Court or procured its favor to any party.
The Court now turns to defendant's equal-protection argument, noting that because the equal-protection guarantees of the Fourteenth Amendment to the United States Constitution and article 1, section 2, of the Rhode Island Constitution provide for similar protections, a separate analysis is unnecessary.
It is well settled that any equal-protection analysis begins with an examination of the nature of classification created by the Legislature. When the classification does not involve a fundamental right and is not related to a suspect classification, the test for constitutionality is more relaxed. In that instance the legislation need only be "rationally related to a legitimate state interest" in order to survive constitutional scrutiny. Because section 9-2-19 is designed to accomplish purely economic and social purposes and because it does not implicate either a fundamental right or a suspect classification, it will impair the equal-protection clause only if the classification it draws is "wholly irrelevant to the achievement of the State's objective." Furthermore, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. Thus, when a challenged economic or social statute responds to a legitimate legislative concern and that statute may achieve a resolution of that problem, it must be sustained on equal-protection grounds. Finally, legislative enactments of the General Assembly are presumed to be constitutional and the challenging party bears the burden of proving otherwise beyond a reasonable doubt.
When deciding if a statute complies with equal protection standards, both the nature of the classification established by the act and the individual rights that may be violated by the act must be examined. The Court's first task, then, is to delineate the nature of the classification drawn by section 9-2-19. Essentially, this section requires that medical malpractice cases be given priority for expedited hearing if the Court finds that the amount recoverable is likely to exceed $100,000.00. The right to request priority is given to both plaintiff and defendant. This right to a priority hearing is, of course, contrary to the generally prevailing rule that cases on the trial calendar are heard in the order docketed.
However, there are at least five other sections of Rhode Island law affording priority upon request. See RIGL 9-1-50, which gives automatic priority to claims brought against insurance companies not paying on a settled claim within 30 days; RIGL 9-2-18, which provides for mandatory priority in actions in which a party over the age of 65 so requests; RIGL 9-2-18.1, which provides for discretionary priority in mechanics' liens actions at the request of any party; RIGL 9-2-20, which provides for mandatory priority in actions likely involving over $100,000.00; and RIGL 15-14-25, which provides for mandatory priority in custody proceedings raising the question of jurisdiction.
The Court need not dally long in determining the interest sought to be furthered by section 9-2-19 since the bill by which it was enacted contains a lengthy preamble which reads as follows:
 WHEREAS, The number of medical and dental malpractice claims being made and the cost of settling such claims by the Medical Malpractice Joint Underwriting Association of Rhode Island, an agency of state government designed to provide a continuing stable institution for medical and dental malpractice liability insurance and the dominant such insurance carrier in this state, has continued to increase significantly; and
 WHEREAS, As a result, the Medical Malpractice Joint Underwriting Association has recently experienced an accelerated negative financial position resulting in a fund deficit as of December 31, 1985; and
 WHEREAS, Insolvency of said Association would have an adverse financial effect upon the citizens of Rhode Island who purchase liability insurance of any type as their premiums would increase in order to offset the deficit or, alternatively, such insolvency would adversely affect all the taxpayers of Rhode Island; and
 WHEREAS, The General Assembly also declares that it is the policy of this state to promote the health and safety of patients in public and private hospitals throughout the state by reducing the incidence of medical and dental malpractice and that the credentialling of physicians and dentists by hospital medical staff committees and otherwise does promote patient health and safety by subjecting physicians and dentists to close scrutiny by their professional peers; and
 WHEREAS, The General Assembly finds that a significant number of medical and dental malpractice claims have been filed against a relatively few health care providers; and
 WHEREAS, The disciplining of the medical and dental profession has been impeded by the lack of a free flow of information due to a fear of civil suit or other consequences to individuals with knowledge of the actions of health care providers; and
 WHEREAS, The General Assembly finds that the potential risk of lawsuits under federal and state antitrust laws presently discourages the thorough and candid evaluation of medical and dental staff privilege applications by physician and dentist peers of such applicants as part of the credentialling process, and that the Board of Medical Review and Board of Examiners in Dentistry are the appropriate agencies of state government to supervise, under the antitrust state action exemption, the granting, denial, renewal, nonrenewal, suspension or removal of hospital medical and dental staff privileges throughout the state; and
 WHEREAS, The General Assembly declares that it is the policy of this state to promote the free flow of information between health care providers and the various peer review and disciplinary organizations in the health care field; and
 WHEREAS, Medical and dental malpractice claims, unlike other tort actions, often are not filed with insurance or health care providers for many years after a cause of action occurs, thereby creating a situation where an unreasonable amount of interest on claims has accrued; and
 WHEREAS, The General Assembly acting within the scope of its police power finds the statutory remedy herein provided is intended to be an adequate and reasonable remedy now and into the foreseeable future[.]
The Court also notes the self-evident legislative purpose of affording those with greater relative concerns somewhat more expeditious access to a trial. The Court concludes that defendant has failed to carry his burden of proving that section 9-2-19 is unconstitutional beyond a reasonable doubt. The Court simply cannot conclude that the classification made by section 9-2-19 is wholly irrelevant to the achievement of the Legislature's stated objectives, even if that classification is perhaps not best expressed nor perfectly fit to their attainment. Some examples will suffice. By the ninth whereas clause, the legislature stated that medical malpractice claims, unlike other tort actions, often are not filed for many years after a cause of action accrues, creating a situation where an unreasonable amount of interest on claims accrues. Though secondarily, section9-2-19 serves to reduce the amount of interest on claims by reducing the overall amount of damages available. Also, as for the first and second whereas clauses, the Court refers to Reid v. Willaims, 964 P.2d 453, 460 (Alaska 1998), where the Court held that "[w]e must also assume that the statute helped alleviate the conditions perceived by the legislature; to abrogate the statute would potentially restore conditions that convinced the legislature to adopt the statute in the first place." Also, the Legislature specifically found in the preamble to the act adopting section 9-2-19 that the statutory remedy provided was intended to be "an adequate and reasonable remedy now and into the foreseeable future." Thus, and contrary to Boucher v. Sayeed, 459 A.2d 87 (R.I. 1983), this Court does not feel comfortable taking "judicial notice of changing times and conditions" to support a conclusion that the classification drawn by section 9-2-19 lacks any rational basis.
Finally, the Court, in as curt a fashion as defendant argues, determines that section 9-2-19 does not impermissibly infringe upon the Superior Court's power to control its own docket.
For the foregoing reasons, and because the Court finds that damages, if liability is proven, are likely to exceed $100,000.00, the plaintiffs' motion to give this matter priority for expedited hearing is granted.